UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| ANTONIO ROSE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 2:22-cv-00005-JPH-DLP |
| | ) |
| DUSHAN ZATECKY, | ) |
| ALSIP, | ) |
| STAMPER, | ) |
| J.C. JACKSON, | ) |
| GRIFFIN, | ) |
| LUNSFORD, | ) |
| HAMMOND, | ) |
| LAMAR, | ) |
| LEVINE, | ) |
| JANE DOE, | ) |
| WEXFORD OF INDIANA, LLC., | ) |
| | ) |
| Defendants. | ) |

**Order Screening Complaint, Dismissing Insufficient Claims, Identifying Misjoined Claims, and Directing Further Proceedings**

Plaintiff Antonio Rose is a prisoner currently incarcerated at Wabash Valley Correctional Facility. He filed this civil action under 42 U.S.C. § 1983 alleging violations of his constitutional rights based on events that occurred while he was incarcerated at Pendleton Correctional Facility ("PCF"). Dkt. 1. He also brings state-law indemnification claims.

### I. Screening Standard

Because the plaintiff is a "prisoner" as defined by 28 U.S.C. § 1915A(c), this Court has an obligation under 28 U.S.C. § 1915A(a) to screen his complaint before service on the defendants. Pursuant to 28 U.S.C. § 1915A(b), the Court must dismiss the complaint, or any portion of the complaint, if it is frivolous or malicious, fails to state a claim for relief, or seeks monetary relief against a defendant who is immune from such relief. In determining whether the complaint states

a claim, the Court applies the same standard as when addressing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *See Cesal v. Moats*, 851 F.3d 714, 720 (7th Cir. 2017). To survive dismissal,

> [the] complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Under this standard, conclusory allegations are not entitled to an assumption of truth. *Id.* at 681. Pro se complaints such as that filed by the plaintiff are construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers. *Cesal*, 851 F.3d at 720 (citing *Perez v. Fenoglio*, 792 F.3d 768, 776 (7th Cir. 2015)).

The documents attached as exhibits to the complaint are deemed part of the complaint for all purposes and were considered by the court at screening. *See Williamson v. Curran*, 714 F.3d 432, 436 (7th Cir. 2013) (the court may consider "documents that are attached to the complaint, documents that are central to the complaint and referred to in it.").

## II. The Complaint

Mr. Rose names 11 defendants in his complaint: (1) Dushan Zatecky, the superintendent of PCF; (2) defendant Alsip, the assistant superintendent of PCF; (3) defendant Stamper, unit team manager at PCF; (4) J.C. Jackson, lieutenant custody official at PCF; (6) defendant Lunsford, a sergeant custody official at PCF; (6) defendant Griffin, a sergeant custody official at PCF; (7) defendant Hammond, a custody officer at PCF; (8) Dr. Lamar, a psychologist employed by Wexford of Indiana, LLC ("Wexford"), at PCF; (9) Dr. Levine, a psychologist employed by

Wexford at PCF; (10) Jane Doe, a nurse at PCF; and (11) Wexford, the contractor that provided medical care at PCF. Each individual defendant is named in his or her individual capacity.[1]

Mr. Rose's allegations are lengthy and detailed. They fall into four main categories, each of which is discussed below. For purposes of the below discussion, the Court assumes that Mr. Rose's allegations are true.

### A.      Exposure to COVID-19

Between February and March 2020, several inmates at PCF became seriously ill and died, so the facility was placed on lockdown. In March 2020, Superintendent Zatecky and members of PCF's administration suspected that inmates housed in the American Legion dorm at PCF had been exposed to COVID-19. After the suspected exposure, Superintendent Zatecky and PCF's administration relocated an ill offender from the American Legion dorm to the dorm where Mr. Rose was housed. At the time, Mr. Rose resided in an "open dorm" that houses 81 inmates close together. Several inmates, including Mr. Rose, became sick, and the dorm was placed on quarantine/lockdown. A week after the first inmate tested positive for COVID-19, Mr. Rose and about 20 other inmates were moved to a different location within the Pendleton Correctional Complex known as IRT and placed in one-man cells because they had COVID-19 symptoms. Any move of this magnitude must be approved by Superintendent Zatecky or Assistant Superintendent Alsip.

---

[1] The introductory section of Mr. Rose's complaint states that he is also attempting to sue Superintendent Zatecky in his official capacity, dkt. 4, but he nowhere states any claims based on an official-capacity theory. Regardless, any such claims would be subject to dismissal. Mr. Rose seeks only monetary relief in this case, and § 1983 claims for money damages against state officials in their official capacities are barred by Eleventh Amendment immunity. *Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001).

Then, the administration directed Sergeant Griffin to threaten to place a COVID-19-positive inmate with Mr. Rose. This was a ruse to convince Mr. Rose and others to remove themselves from the one-man cells in IRT. Because Mr. Rose feared for his life, he complied. Mr. Rose and other inmates were then moved back into the main part of PCF. Again, any such move of this magnitude must be approved by Superintendent Zatecky and Assistant Superintendent Alsip. After the move, Mr. Rose and others were mixed with four separate quarantined groups of inmates. Mr. Rose was one of 46 inmates crowded together in a gym in unsanitary and improper living conditions. While the inmates were quarantined in the gym, inmates were coming and going regularly due to various medical issues.

**B.    Denial of Medical Treatment**

While Mr. Rose was housed in the gym, he asked several times to speak with mental health because he was suffering from major depression and extreme anxiety based on the lack of medical treatment. He believed that the prison staff was trying to kill him by exposing him and others to COVID-19. Mental health staff denied Mr. Rose any treatment for his mental illness symptoms. Facility medical staff also refused to provide any treatment for his physical symptoms, which included cold chills, extreme pain and inflammation of the lungs, and severe headaches. Nurse Jane Doe refused to refer Mr. Rose for Tylenol, aspirin, or any other treatment to help his symptoms.

**C.    Prison Disturbance**

On April 15, 2020, Mr. Rose and the other 46 other inmates in the gym were tested for COVID-19 by the Indiana Department of Health ("DOH"). The DOH told PCF staff members (including Superintendent Zatecky, Assistant Superintendent Alsip, and Unit Team Manager Stamper) that no inmates should be relocated into or out of the gym until the test results came

back, which would be in two or three days. Despite this, on April 17, Unit Team Manager Stamper and Lieutenant Jackson tried to move a COVID-19-positive inmate into the gym.

At that point, numerous inmates demanded to speak with a higher ranking official. Specifically, "the whole entire F-gym beg[a]n to get animated and yell get him out and due to the loudness yard was called to try and place [the COVID-19-positive] inmate inside." Dkt. 1-1 at 3. Mr. Rose also tried to ask why they were moving COVID-19-positive inmates into the gym when the DOH had warned against such action. Unit Team Manager Stamper became worried that the situation would get out of hand, so she called a "Signal 10," which resulted in first responders and yard staff coming into the gym. The first responders included Sergeant Lunsford and Officer Hammond. Unit Team Manager Stamper then began spraying wide arcs of mace, even though she gave no warning or any orders. Mr. Rose was struck directly in the eyes, causing him to be temporarily blinded. He also had difficulty breathing.

Once Mr. Rose's vision started to return, he saw several staff members attacking another inmate, Nicholas LaCruze. Mr. Rose noticed that one of the staff members had a knee placed on the back of Mr. LaCruze's neck and heard Mr. LaCruze yelling that it was hard for him to breathe. Mr. Rose then tried to pull the staff member off of Mr. LaCruze, but was "met with more (mace)." Dkt. 1 at 13. Shortly after, he was handcuffed and placed in a shakedown cage for six hours covered in mace.

Superintendent Zatecky and Assistant Superintendent Alsip are notified of any prison disturbance of this magnitude.

D.      **Events Following Prison Disturbance**

Several days after the disturbance—on April 19, 2020—Mr. Rose was informed by a DOH employee that he had tested negative for COVID-19.

5

After the disturbance, Mr. Rose was refused a shower and left with mace on his face and clothes. He was not allowed to shower until April 20, 2020. He was placed in a cell with a toilet, but it did not work, and the water in the cell's sink was brown and bronze-looking. From April 17 to 23, 2020, Mr. Rose was refused clean drinking water. He was also placed in a van with several inmates who had tested positive for COVID-19 while being transferred to the Westville Control Unit.

### E.     Injuries and Relief Requested

Mr. Rose alleges the following injuries as a result of the actions described above: (1) infection and pain due to COVID-19 symptoms; (2) disciplinary segregation for over 18 months; (3) 13 years in lost credit time; (4) restitution for over $2200 owed to the IDOC; (5) not being able to shower for four days while covered in mace; (6) being hand-cuffed from the back for more than six hours while covered in mace; (7) no drinking water for almost a week; and (8) staff members have alleged that he caused them to incur hospital bills. He pursues various Eighth Amendment claims. He seeks compensatory and punitive damages. He also pursues state-law indemnification claims against Superintendent Zatecky and Wexford.

## III. Discussion of Claims

### A.     Claims That Must Be Dismissed

Under the screening standard, some of Mr. Rose's claims must be dismissed. The Court discusses the claims that must be dismissed separately, below:

**1.     Count One: Failure to Protect and Deliberate Indifference Claims Against Wexford, Superintendent Zatecky, Assistant Superintendent Alsip, Unit Team Manager Stamper, Lieutenant Jackson, and Sergeant Griffin**

In Count One, Mr. Rose alleges that Wexford, Superintendent Zatecky, Assistant Superintendent Alsip, Unit Team Manager Stamper, Lieutenant Jackson, and Sergeant Griffin

violated the Eighth Amendment because they failed to protect him and demonstrated deliberate indifference to his health and safety when they threatened to expose him to a COVID-19-positive inmate and knowingly exposed him to COVID-19 "on numerous occasions." Dkt. 1 at 16.

If Mr. Rose did not contract COVID-19 as a result of these actions, then he suffered no cognizable injury, and this claim must be dismissed. Mr. Rose's complaint is somewhat internally inconsistent in that he appears to simultaneously allege that: (1) he was suffering from COVID-19 when he was housed in his dorm, the one-man cell, and the gym, *see* dkt. 1 at 9–10, 11; and (2) that he was COVID-19 negative in the same time frame, *see id.* at 14. Regardless, even under the most liberal interpretation, Mr. Rose's complaint plausibly alleges that he contracted COVID-19 only once: after Superintendent Zatecky and "PCF's Administration" decided to move an ill inmate they suspected of having been exposed to COVID-19 to Mr. Rose's dorm. *Id.* at 9–10. To the extent that he seeks to recover for any threats to house him with a COVID-19-positive inmate or any other potential COVID-19 exposures, Mr. Rose has not alleged that those actions caused him any legally cognizable injury, and such claims against these defendants are **dismissed for failure to state a claim on which relief can be granted**.[2] *See Lord v. Beahm*, 952 F.3d 902, 905 (7th Cir. 2020) (when an inmate seeks money damages under the Eighth Amendment "solely for the risk to his life," the "risk is not compensable without evidence of injury").

As to the exposure while he lived in the dorm, "For constitutional violations under § 1983 . . . , a government official is only liable for his or her own misconduct." *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015) (citation and quotation marks omitted). That is, "[l]iability under § 1983 is direct rather than vicarious; supervisors are responsible for their own acts but not for

---

[2] In his list of "actual injuries" suffered, Mr. Rose does not list psychological harm from the threat of COVID-19 exposure as a claimed injury. Dkt. 1 at 15 (listing "infection and physical pain due to symptoms from COVID-19"). Thus, the Court does not understand Mr. Rose to be seeking damages for such harm.

7

those of subordinates, or for failure to ensure that subordinates carry out their tasks correctly." *Horshaw v. Casper*, 910 F.3d 1027, 1029 (7th Cir. 2018). Mr. Rose does not plausibly allege that Wexford, Unit Team Manager Stamper, Lieutenant Jackson, or Sergeant Griffin played any part in the decision to move the ill inmate to Mr. Rose's dorm or, as to Wexford, that a policy, practice, or custom of Wexford caused his injury.[3] Thus, his claims against those defendants based on COVID-19 exposure in the dorm are **dismissed for failure to state a claim upon which relief can be granted**.

Construing Mr. Rose's reference to "PCF Administration" liberally to include Assistant Superintendent Alsip, that leaves only one potentially viable claim in Count One: Mr. Rose's allegation that Superintendent Zatecky and Assistant Superintendent Alsip failed to protect him and were deliberately indifferent to his health and safety when they moved an ill inmate whom they suspected of having been exposed to COVID-19 to Mr. Rose's crowded, open-air dorm, after which Mr. Rose contracted COVID-19. The Court discusses this claim in more detail in Section B, below.

### 2.     Count Three: Inadequate Medical Care Claims Against Dr. Lamar and Dr. Levine

In Count Three, Mr. Rose alleges that Dr. Lamar and Dr. Levine violated the Eighth Amendment by being deliberately indifferent to his serious medical condition when they failed to treat him for mental illness symptoms after his COVID-19 exposure. To allege a claim based on deliberate indifference to a serious medical condition, Mr. Rose must allege facts plausibly supporting the inference that Drs. Lamar and Levine actually knew of and disregarded a substantial

---

[3] Although a private entity, Wexford acts under color of state law, and therefore Mr. Rose can state a claim for damages against Wexford under § 1983 only if he alleges that a Wexford policy, practice, or custom caused the constitutional violation. *Walker v. Wexford Health Sources*, 940 F.3d 954, 966 (7th Cir. 2019).

risk of harm to him. *See Petties v. Carter*, 836 F.3d 722, 728 (7th Cir. 2016) (en banc). But Mr. Rose does not allege that Drs. Lamar and Levine even knew about his symptoms or his requests for care or any other facts supporting a claim of deliberate indifference. As explained above, Drs. Lamar and Levine can only be responsible for constitutional violations in which they participated. They cannot be liable for the failings of other mental health staff members. Accordingly, his claims against them are **dismissed for failure to state a claim upon which relief can be granted**.

### 3. Count Four: Excessive Force Claims Against Unit Team Manager Stamper, Lieutenant Jackson, Sergeant Lunsford, and Officer Hammond

In Count Four, Mr. Rose alleges that Unit Team Manager Stamper, Lieutenant Jackson, Sergeant Lunsford, and Officer Hammond violated the Eighth Amendment by repeatedly spraying him with mace and handcuffing him for six hours while he was covered in mace.

As to the allegations about hand-cuffing Mr. Rose while he was covered in mace, he alleges only that he "was handcuffed" and that "they" refused him a shower. Dkt. 1 at 13–14. He does not specify which of these defendants, if any, caused him to be handcuffed for six hours while he was covered in mace or refused him a shower. Accordingly, his claims against these defendants based on handcuffing and shower refusal are **dismissed for failure to state a claim upon which relief can be granted**.

As to the mace allegations, Mr. Rose singles out only one defendant as having sprayed him with mace: Unit Team Manager Stamper. *See id.* at 13. Thus, to the extent he is seeking to hold the other defendants liable for spraying him with mace, his claims are **dismissed for failure to state a claim upon which relief can be granted**.

That leaves only one potentially viable claim in Count Four: Mr. Rose's claim that Unit Team Manager Stamper subjected him to excessive force when she "began spraying wide arcs of

[mace]" with no warning. Dkt. 1 at 13. The Court discusses that claim in more detail in Section B, below.

### 4. Count Five: Conditions-of-Confinement Claims Against Superintendent Zatecky, Assistant Superintendent Alsip, Lieutenant Jackson, Sergeant Lunsford, and Officer Hammond

In Count Five, Mr. Rose alleges that Superintendent Zatecky, Assistant Superintendent Alsip, Lieutenant Jackson, Sergeant Lunsford, and Officer Hammond subjected him to "significant hardships" when he was refused a shower for four days despite being covered in mace and was denied clean drinking water for six days. Dkt. 1 at 18. The Court understands Mr. Rose to be attempting to state an Eighth Amendment conditions-of-confinement claim. But, as with the claims alleged in Count Four, Mr. Rose's complaint is devoid of any allegations suggesting that these defendants were personally involved in the conditions addressed in Count Five. Instead, Mr. Rose alleges only that "they" refused him a shower and that he "was refused" clean drinking water. *See id.* at 14. Accordingly, the claims alleged in Count Five are **dismissed for failure to state a claim upon which relief can be granted**.

### 5. Counts Six and Seven: Inadequate Health Care Claims Against Superintendent Zatecky and Wexford

In Counts Six and Seven, Mr. Rose alleges that Superintendent Zatecky and Wexford violated the Eighth Amendment by failing to provide him with adequate health care, both as to his physical health and his mental health. He sets forth these claims as follows:

> The policy and practice/inadequate medical care claim against defendants Zatecky and Wexford for not implementing policies, procedures, and practices to make sure that offenders at Pendleton Correctional Facility receive the right and proper medical care; and failing to contract for medical services in a way that financially would not affect the decision to attend the treatment obligation; the oppressive acts of [Wexford employee] Ippel to carring out a practice to reduce the price of care by denying or delaying me necessary medical testing and proper medical treatment were all acts or omissions done with malicious and bad intent (in bad faith) to cause harm, and caused me pain . . . .

10

> The policy and practice/inadequate mental health care claim against Wexford for maintaining a widespread policy or practice among their employees or providing seriously mentally ill (SMI) offenders with improper mental health testing and treatment, where Wexford encourages their employees to: (1.) consistently deny or intentionally find that mental health care treatment requests from (SMI) offenders have been provided the proper mental health treatment; (2.) allow (SMI) offenders to be place in prolonged segregation; (3.) falsify documents to indicate that (SMI) offenders have been provided the proper mental health treatment; (4.) deny mental health treatment; (5.) intentionally injury (SMI) offenders deteriorating mental states; (6.) intentionally exacerbate (SMI) offenders mental health disorders and instigate their triggers to create a pretext for placing them in segregation . . . .

Dkt. 1 at 19–20 (errors in original).

As to the claims against Superintendent Zatecky, Wexford was the contracted health care provider for the IDOC in 2020. Dkt. 1 at 2. There are no factual allegations plausibly suggesting that Superintendent Zatecky was responsible for contracting with Wexford to provide health care at PCF. Likewise, Mr. Rose's complaint lacks factual allegations plausibly suggesting that he was denied medical care in connection with the events described in the complaint because Superintendent Zatecky failed to adopt appropriate policies, procedures, or practices, as opposed to—for example—the one-time negligent acts of a Wexford employee. *Cf. Dean v. Wexford Health Sources, Inc.*, 18 F.4th 214, 236–37 (7th Cir. 2021) (concluding in a *Monell* case against Wexford, that the plaintiff had not shown a pattern or practice of similar violations with respect to other inmates sufficient to support a pattern-or-practice claim under the Eighth Amendment, but only that problems with Wexford's collegial review process caused unconstitutional delays in his own health care; explaining that one purpose of the policy-or-practice requirement is to ensure that the policy is the moving force behind any violation, as

11

opposed to the one-time negligent administration of the program or other factors peculiar to the officer involved in a particular injury). Instead, Mr. Rose alleges only that, during his COVID-19 quarantine, he was denied medical care for his physical symptoms and was denied mental health treatment. Accordingly, the Eighth Amendment claims against Superintendent Zatecky related to his failure to adopt appropriate policies for the provision of health care are **dismissed for failure to state a claim upon which relief can be granted.**

That leaves only one potentially viable claim in Counts Six and Seven: An Eighth Amendment claim that Wexford implemented policies and procedures that caused Mr. Rose not to receive adequate health care. The Court discusses that claim in more detail in Section B, below.

### 6. Indemnification Claims

In an unnumbered count, Mr. Rose states that he is pursuing Indiana state-law indemnification claims against Superintendent Zatecky and Wexford "for any and all future awards and judgments against the defendants, unless otherwise directed by a judicial officer of this Court." Dkt. 1 at 21. "In Indiana, a party may seek indemnification based on rights under statute, contract, or common law." *Land Innovators Co., L.P. v. Bogan*, 15 N.E.3d 23, 35 (Ind. Ct. App. 2014). Mr. Rose's complaint does not explain the legal basis for any indemnity claim in this case, nor does he explain who would be indemnifying whom and for what. Accordingly, this claim is **dismissed for failure to state a claim upon which relief can be granted**.

### B. Remaining Claims

After the Court's initial review, only three claims remain as potentially viable:

- Eighth Amendment claims against Superintendent Zatecky and Assistant Superintendent Alsip based on allegations that they exposed him to COVID-19 by moving an ill inmate into Mr. Rose's open-air dorm even though they suspected that the inmate had been exposed to COVID-19. *See* dkt. 1 at 16 ("COVID Exposure Claims").

- Eighth Amendment claims against Nurse Jane Doe and Wexford based on allegations that Mr. Rose was denied health care for both his physical and mental health symptoms during the time period covered by the complaint. *See id.* at 17, 19–20 ("Health Care Claims").

- Eighth Amendment excessive-force claim against Unit Team Manager Stamper based on allegations that she sprayed Mr. Rose with mace during the prison disturbance. *See id.* at 18 ("Excessive-Force Claim").

1.   **Claim That Shall Proceed**

As the above summary makes clear, the three remaining potentially viable claims are three separate claims against three separate sets of defendants based on three separate transactions, occurrences, or series of transactions or occurrences. "[M]ultiple claims against a single party are fine, but Claim A against Defendant 1 should not be joined with unrelated Claim B against Defendant 2. Unrelated claims against different defendants belong in different suits . . . ." *George v. Smith*, 507 F.3d 605, 607 (7th Cir. 2007). Instead, joinder of the defendants into one action is proper only "if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences" and if "any question of law or fact common to all defendants will arise in the action." Fed. R. Civ. P. 20(a). In short, the courts do not allow an inmate to treat a single federal complaint as a sort of general list of grievances. Under this standard, the COVID Exposure Claims, the Health Care Claims, and the Excessive Force Claim cannot proceed together in the same lawsuit.

**This action will proceed as to the Eighth Amendment claim that Unit Team Manager Stamper used excessive force when she sprayed mace during the prison disturbance on April 15, 2020, thereby injuring Mr. Rose.** At this early stage of the proceeding, and construing Mr. Rose's complaint liberally, Mr. Rose's allegations state a claim of excessive force under the Eighth Amendment against Unit Team Manager Stamper and shall proceed as submitted. This claim was

chosen to proceed because it survives the screening requirement of 28 U.S.C. § 1915A. In addition, it is a stand-alone claim which cannot be understood to overlap with any other potentially claims.

### 2. Misjoined Claims

For the reasons stated above, the COVID Exposure Claims and the Health Care Claims are misjoined and cannot proceed in this case. In such a situation, "[t]he court may . . . sever any claim against a party." Fed. R. Civ. P. 21. Generally, if a district court finds that a plaintiff has misjoined parties, the Court should sever those parties or claims, allowing those grievances to continue in spin-off actions, rather than dismiss them. *Elmore v. Henderson*, 227 F.3d 1009, 1012 (7th Cir. 2000).

The misjoined claims shall either be severed into new actions or dismissed without prejudice. Mr. Rose is the master of his complaint and shall be given the opportunity to determine which course is followed. *Myles v. United States,* 416 F.3d 551, 552 (7th Cir. 2005) (noting that the composition and content of the complaint are entirely the responsibility of the plaintiff, for "even *pro se* litigants are masters of their own complaints and may choose who to sue-or not to sue").  If new actions are opened, Mr. Rose will be responsible for the filing fee associated with each new case. In addition, he will be required to file an amended complaint for each new case, and the screening requirement of 28 U.S.C. § 1915A(b) will be triggered for each new case. As always, Mr. Rose should consider whether to file any particular civil action.

Mr. Rose shall have **through August 17, 2022,** in which to **notify the Court** whether he wishes the Court to sever any claims identified above into new actions, and if so, he must identify which claims against which defendants that he wishes to pursue. **If Mr. Rose fails to so notify the Court by that date, the misjoined claims will be considered abandoned and will be dismissed without prejudice.**

## IV. Conclusion and Service of Process

In summary, the following claim **shall proceed** in this case:

- Eighth Amendment excessive force claim against Unit Team Manager Stamper based on allegations that she injured Mr. Rose when she sprayed mace during the prison disturbance on April 15, 2020.

The COVID Exposure Claims against Superintendent Zatecky and Assistant Superintendent Alsip and the Health Care Claims against Nurse Jane Doe and Wexford are misjoined and cannot proceed in this action. As stated above, Mr. Rose shall have up to and including **August 17, 2022**, to notify the Court whether he wishes the Court to sever either of those claims into new actions, and if so, he must identify which claims against which defendants that he wishes to pursue. If he fails to do so, the misjoined claims will be considered abandoned and dismissed without prejudice.

This summary of claims includes all of the potentially viable claims identified by the Court. All other claims have been **dismissed** for the reasons stated above. If Mr. Rose believes that additional claims were alleged in the complaint, but not identified by the Court, he shall have **through August 17, 2022**, to identify those claims. Mr. Rose is, however, reminded that, whenever he signs and submits a document to this Court, he is representing that "to the best of [his] knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . , the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Thus, he may be subject to sanctions if he knowingly attempts to pursue additional claims based on factually false allegations.

The **clerk is directed** pursuant to *Fed. R. Civ. P.* 4(c)(3) to issue process to defendant Unit Team Manager Stamper, in the manner specified by Rule 4(d). Process shall consist of the complaint filed on January 5, 2022, dkt. [1], applicable forms (Notice of Lawsuit and Request for Waiver of Service of Summons and Waiver of Service of Summons), and this Order.

The **clerk is directed** to serve Unit Team Manager Stamper, who is an Indiana Department of Correction employee, electronically.

The **clerk is directed** to terminate the following as defendants on the docket: J.C. Jackson, Griffin, Lunsford, Hammond, Dr. Lamar, and Dr. Levine.

**SO ORDERED.**

Date: 7/25/2022

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

ANTONIO ROSE
190314
WABASH VALLEY - CF
WABASH VALLEY CORRECTIONAL FACILITY - Inmate Mail/Parcels
6908 S. Old US Hwy 41
P.O. Box 1111
CARLISLE, IN 47838

Electronic Service to Indiana Department of Correction:

Unit Team Manager Stamper (employed at Pendleton Correctional Facility)